## DUNBAR v. FOREMAN.

1. FINDINGS OF FACT—MARRIED WOMEN.—Where the Circuit Judge finds from the written testimony submitted to him that a mortgage given by a married woman in 1887 was given by her to secure a debt due by her husband for money borrowed and used by him, and that he was not her agent, and such findings not being without evidence to support them, or manifestly against its weight, the mortgage was properly held to be void.
2. MORTGAGE—POWER OF SALE—MARRIED WOMEN.—While a power of sale in a mortgage cannot be revoked by the mortgagor, as it is part of the security, it is revocable by a married woman during her lifetime, where the mortgage itself is void as a security for want of legal power in the mortgagor to execute the mortgage.
3. CASE CRITICISED.—This case distinguished from Neal *v.* Bleckley, 36 S. C., 468.

Before ALDRICH, J., Aiken, July, 1893.

Action by Martha B. Dunbar against Jacob Foreman, commenced December 23, 1891. The Circuit decree, after a state-

ment of the issues and the decisions of this court as to the contracts of married women, proceeded as follows:

My conclusions of fact are: That R. J. Dunbar, the husband of plaintiff, was not her agent; that plaintiff, neither in person or by agent, borrowed the money which the mortgage in question was given to secure; that said mortgage was given to secure a debt due by her said husband to the defendant; that none of the money borrowed by the said husband was received or used by plaintiff; nor was it used for the benefit of her separate estate, or with reference thereto; that the bond of plaintiff, and her mortgage purporting to secure the payment of same, was not a contract of hers, with reference to her separate estate, but were given to secure a debt of her husband to defendant.

The burden of proof is upon the defendant. The probate of the mortgage appears to have been executed before the mortgage was executed, and the abbreviated names of two separate months, viz., "Oct." and "Nov.," are stated in the probate as the day or days upon which the oath was taken. This may be the result of negligence, or a mere clerical error; but it, at least, shows carelessness. The witness to the execution of the mortgage, rather one of the witnesses, was J. T. Martin; he was also the notary before whom the probate was made. If, as a notary, he made the mistakes above noted, he, as a witness, may also make mistakes. The character of this witness, Martin, for veracity and sobriety was attacked, and witnesses testified for and against his character. I don't think that Mr. Martin's character for veracity has been successfully assailed; but I must believe that Mr. Martin, at the time to which his testimony refers, was addicted to the excessive use of strong drink. The testimony of R. J. Dunbar and that of the defendant cannot be reconciled. They contradict each other on several material respects. Both of these witnesses are gentlemen of high character, and I prefer to believe that this difference are the results of defective memories, for I cannot well conceive how either of them could deliberately swear falsely about the small sum of money. Let this painful subject pass.

James H. Bush testified that long after the mortgage became

due, defendant told him that R. J. Dunbar owed him the money, and never mentioned plaintiff's name. Again, defendant in his efforts to collect the money, after maturity of the debt and the interest, called upon Mr. R. J. Dunbar, and not upon the plaintiff. There is also testimony that when W. L. Dixon, as the agent of the defendant, carried the money, constituting the loan, from defendant, he delivered it to R. J. Dunbar, and took his sole and individual receipt for the same. He did not procure, or even ask for, a receipt from plaintiff. It is necessary to say, that while no effort was made to attack the character of W. L. Dixon, yet learned physicians testified for and against the soundness of his memory, which, it was contended, was seriously impaired by age and disease. Plaintiff's testimony is given in the language of a lady, unacquainted with business methods, and adds another chapter to the old story of how a loving and confiding wife will, at her husband's request, sign her name to papers, in too frequently the vain hope that she has relieved his distress.

I might go on, and give other reasons upon which my conclusions upon the facts are based, but I must pass on to a question of law.

The learned counsel for defendant, in an able argument, claimed that if the court should find that the debt evidenced by the bond and mortgage from the plaintiff to the defendant was a debt contracted, not for the benefit of her separate estate, but that the money was borrowed by Mr. Dunbar, and that plaintiff, at his request, to secure said debt to defendant, executed the mortgage in question, then, he submitted, as that mortgage contains a power of sale, with a power of attorney to the mortgagee to sell the property at public auction, and to deed the same to the purchaser, and apply the proceeds of the sale to the payment of his debt, that in equity Mrs. Dunbar, plaintiff, cannot enjoin her attorney in fact from proceeding to execute the power granted him, except she alleges and proves fraud.

In support of this position, it was argued that under the Constitution and acts of this State, there is no question that a married woman had the right to alienate her property, either for valuable consideration or by deed of gift. She had power

to alienate in either of these ways, and what she had the power to do by herself, she had the right to delegate to another. In this case, plaintiff has exercised that power by delegating that right to her attorney in fact, and unless she had alleged and proven that he had obtained this power of attorney through fraud, or was exercising it in fraud, she cannot revoke the power of attorney. It can only be revoked by death. What defendant is doing, and endeavoring to do, and what plaintiff seeks to restrain him from doing, is exactly what plaintiff directed defendant to do, and what she had the power to direct him do, hence she had no right to stop him.

I cannot concur with the learned counsel as to the facts upon which his position is based, nor his conclusions of law. The power of sale is part and parcel of a paper purporting to be a mortgage, which is void; because the mortgagor, being a married woman, had no power to execute it. The purpose of the power of sale was to give to the mortgagee a quick, cheap, and efficient means of paying the debt the mortgage was given to secure, in the event of its "non-payment" by the mortgagor, according to the terms of the contract. *Johnson* v. *Johnson*, 27 S. C., 309. It is the duty of a court to enforce, not to make contracts. Admit, for the moment, that the power of sale remains intact, though the mortgage in other respect is void, what right of power does it give to defendant? It is evident that the power of sale is special or limited; because it authorizes a special act, viz: the sale for a special purpose, to wit: to raise money to pay plaintiff's personal bond. All powers are strictly construed, and with reference to the purpose for which they were given. 2 Kent, 643–46. Suppose the court were to stay its hand, and defendant were to sell the land under the power of sale, what could he do with the proceeds? He could not apply the proceeds to the payment of plaintiff's personal bond; because the court says, under the law, that is void; and he could not pay the debt due by R. J. Dunbar to himself for two reasons—first, because there is no warrant for such payment in his power of attorney or sale, and second, because he denied in his pleadings, and testified under oath, that R. J. Dunbar does not owe him any money.

Is the power of sale, admitting that it exists, irrevocable? If it is, then plaintiff has revoked the same. 2 Kent, 643–4. As I have said, and as the recitals in the mortgage and power of sale under consideration show, it was given as part and parcel of the security, to be used, exercised, if it became "necessary to give effect to such security." If it is a part of the security, then, under the law, it is void; because the plaintiff had no power to give such security, and it is void *in toto*. There is no attempt even to show that plaintiff gave the power of attorney for a valuable consideration, hence that question needs no consideration.

The case of *Neal* v. *Bleckley*, 36 S. C., 468, *et seq.*, does not decide or discuss the question raised here; because in that case the married woman did owe a part of the money secured by the mortgage of her husband and herself, which mortgage contained power of sale, and she permitted the sale to be made. See page 478. Plaintiff, in this action, instead of reaffirming, has disaffirmed the power given to defendant, revoked the power; the land has not been sold, no conveyance made, the rights of third parties are not involved; she has shown that the mortgage is invalid, has even obtained the aid of this court, by way of preliminary injunction, and is now asserting her right to force defendant to surrender his claims under said power of sale.

Defendant relies chiefly on the law as stated in the cases of *Hunt* v. *Rousmanier's administrators*, 8 Wheat., 174; also reported in 5 Curtis, page 379, *et seq.*, and *Hartley & Minor's Appeal*, 53 Penn., 212; also reported in 91 Am. Dec., 207. By the phrase a power "coupled with an interest," is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate. Two cases just cited, and *Johnson* v. *Johnson*, 27 S. C., 316. Applying this definition to the case under consideration, it is clear that defendant, under the power of sale, took no interest in the land of the plaintiff; his interest, if any, is in the proceeds of the sale. Hence the defendant's "interest would properly begin when the power ended." *Hartley & Minor's Appeal, supra*, 208.

Both of these cases recognize the general rule, that a power of attorney or sale is revokable. * * * In Hunt's case,

Rousmanier applied to Hunt to borrow money, agreeing to secure its repayment by his note, and, as collateral security, to give Hunt a power of attorney, authorizing him, upon default of payment, to sell Rousmanier's interest in certain vessels at sea. The money was lent, notes and power of attorney given, default of payment made; Rousmanier died, and Hunt attempted to sell Rousmanier's said interest in said vessels, under the power of attorney. It was held that Rousmanier's death revoked the power of attorney; but that has nothing to do with the case under consideration. It was also held in Hunt's case that Rousmanier during his life could not have revoked the power of attorney, because said power of attorney was a part of the agreement, the "security" for the money borrowed. In Hartley & Minor's appeal, *supra*, Hannah Gallion, an heir of John Duglass, gave a power of attorney to appellant to act for her in forcing a settlement of the estate in the hands of the administrator, and agreeing to give them one-half of the net proceeds of what they might recover for her. Held that Hannah Gallion had the right and power to revoke her said power of attorney. On this subject see 1 Am. & Eng. Enc. Law, 445, and notes; *Johnson* v. *Johnson*, 27 S. C., 309.

In this case, as I have endeavored to show, plaintiff's alleged mortgage is void, because she had no power to execute it, to secure her husband's debt. Therefore, the power of sale can-not stand for the payment of plaintiff's debt—there is in law no such debt. Hence, under the authorities, she can revoke it. It cannot stand as the security for her husband's debt, because she had no right to make such a contract, and the so-called mortgage does not authorize it. It cannot be said in this case that plaintiff intended to give her husband a certain sum of money; that she carried that intention into effect by executing the power of sale in question. It requires a deed to convey land, and a power of attorney to sell land must be executed with due formality. The power in this case discloses the intent of the maker, and there is no gift, or intended gift, referred to. *Johnson* v. *Johnson*, 27 S. C., 315.

The law as to married women may be wise or otherwise. That is not left to courts to determine. It may be that as a

married woman can own property, she should have all the power given to men in the business affairs of life—I am not prepared to endorse any policy, should it be proper for me to do so; but if the law is to be enforced as it is, and the decisions of our Supreme Court are to control, as they should, then this plaintiff is entitled to the relief she demands. My conclusions of law are that the bond and mortgage of plaintiff to defendant are null and void, that the power of sale fell with the mortgage, and that plaintiff is entitled to a judgment in her favor.

Wherefore, it is ordered, adjudged, and decreed, that the bond and mortgage executed by the plaintiff to the defendant, dated November 16th, 1887, be, and the same are hereby, set aside as null and void, and that the same be delivered up to the plaintiff, cancelled, that the record of said mortgage be marked cancelled, and a reference to this decree noted thereon, and that the injunction heretofore granted in this action be, and the same is hereby, made perpetual; that the costs and disbursements of this action be taxed by the clerk of this court, and that the defendant do pay said costs and disbursements.

*Messrs. Henderson Bros.*, for appellant.

*Mr. Claude E. Sawyer*, contra.

March 5, 1894. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. The plaintiff, a married woman, the wife of R. J. Dunbar, on November 11, 1887, gave to the defendant, Foreman, a bond for $200, and on the same day executed to him a mortgage of a tract of land belonging to her, containing 230 acres, to secure the payment of the same. In case of non-payment of the said bond debt, the mortgage contained a provision as follows: "Then, and in such case, it shall and may be lawful for the said Jacob Foreman, &c., and the said Martha B. Dunbar doth hereby empower and authorize the said Jacob Foreman, &c., to grant, bargain, sell, release, and convey the said premises, with the appurtenances, at public auction or vendue; * * * and on such sale, to make and execute to the purchaser a conveyance in fee of the said premises; and after deducting from the proceeds of said sale the principal

and interest due on said debt, then to hold the overplus for the said Martha B. Dunbar," &c. It seems that there was default in the payment of the bond, and the mortgagee, Foreman, by virtue of the aforesaid power of attorney in the mortgage, advertised the mortgaged land for sale on salesday of January, 1891.

Thereupon the plaintiff instituted this proceeding to perpetually enjoin said sale, alleging, among other things, that the said mortgage was given to secure a debt due by her husband to the defendant; that none of the money alleged to have been borrowed from defendant was received by her, or used for her benefit, or the benefit of her separate estate, and that the said bond and mortgage were absolutely void. The defendant answered, denying the allegations against the validity of his mortgage, and by way of affirmative relief, prayed for a regular foreclosure of his mortgage by order of court, and for such other relief as may be deemed proper. It was referred to the master to take the testimony, which was voluminous, and, we regret to be obliged to say, not only conflicting, but in some respects absolutely contradictory. The cause came on to be heard by his honor, Judge Aldrich, who, after a full and careful examination of all the evidence and the law applicable, decreed "that the bond and mortgage executed by the plaintiff to the defendant, and bearing date November 16, 1887, be, and the same is hereby, set aside as null and void, and that the same be delivered up to the plaintiff cancelled; that the record of said mortgage be marked cancelled and a reference to this decree noted thereon; and that the injunction granted in this action be made perpetual," &c.

From this decree (which we hope will appear in the report of the case) the defendant appeals to this court upon the following exceptions: I. That his honor erred in finding that R. J. Dunbar, the husband of the plaintiff, was not her agent in the transaction in question; that the plaintiff neither in person nor by agent borrowed the money which the mortgage was given to secure; that the mortgage was given to secure a debt due by the husband to the defendant; that none of the money borrowed by said husband was received or used by the plaintiff for the benefit of her separate estate, or with reference thereto;

32—40

that the bond of the plaintiff and her mortgage, purporting to secure the same, was not a contract by her with reference to her separate estate, but was given to secure the debt of her husband to the defendant. Whereas, he should have found that said husband was the agent of the plaintiff in said transaction; that said debt was the debt of the plaintiff, and for the benefit of her separate estate, and, as such, was binding upon the plaintiff and enforcible against her, &c. II. That his honor erred in holding that the plaintiff was entitled to a perpetual injunction against the defendant, and could enjoin him from executing the power of sale given by her to the defendant in the power of attorney contained in the mortgage deed, the subject of this action. Whereas, he should have held that the plaintiff, being a married woman, had the right to alienate her property, and having given the defendant the power of attorney to sell the property and apply the proceeds to the debt due the plaintiff (defendant), whether that debt be the debt of her husband or of herself, she could not enjoin the plaintiff (defendant) from executing the power of attorney given, unless *fraud* was alleged and proved, &c.

The questions as to the rights of married women, which have arisen out of the Constitution of 1868 and the laws since passed under it, have been so often before this court that we can hardly think it necessary to go into the subject again in this case. We have here but two questions, one of fact and the other of law. The first exception complains of certain findings of fact by the Circuit Judge, who seems to have taken great pains in examining, much in detail, the great mass of testimony. He says: "My conclusions of fact are: That R. J. Dunbar, the husband of plaintiff, was not her agent; that plaintiff neither in person or by agent borrowed the money, which the mortgage in question was given to secure; that said mortgage was given to secure a debt due by her said husband to the defendant; that none of the money borrowed by the said husband was received or used by plaintiff, nor was it used for the benefit of her separate estate, or with reference thereto; that the bond of plaintiff, and her mortgage purporting to secure the payment of the same, was not a contract of hers, with

reference to her separate estate, but was given to secure a debt of her husband to the defendant," &c. We have carefully read and considered the evidence, especially the points as to which error is charged, and we cannot say that the aforesaid findings by the Circuit Judge are without any testimony to support them, or are manifestly against the weight of the evidence. In such case, the rule is well understood, that the findings will not be disturbed, but stand as the established facts. "A married woman has no power to borrow money for the use of her husband; nor to give her note therefor, nor bind her separate estate by a mortgage to secure such note. Therefore, such note and mortgage cannot be enforced against the maker, where the lender knew that the money was to be used in paying a judgment debt of the husband." *Salinas* v. *Turner*, 33 S. C., 232, and cases cited.

Exception second. It is earnestly contended that even if the Circuit Judge was right in his findings of fact, yet it was error of law to grant a perpetual injunction, for the reason that the mortgage in question, given by a married woman, contains a power of sale, and a power of attorney from the mortgagor to the mortgagee, to sell the property at public sale, pay the debt in question, deed the property to the purchaser, and pay the surplus, if any, to Mrs. Dunbar; that such a power of attorney, even though it be a part of a void security, can be made by a married woman, because of her constitutional right of alienation, and when made it is irrevocable save by her death.

It is undoubtedly true, that under the high authority of the Constitution, Mrs. Dunbar had the right to sell her land, either in person or by an agent appointed for that purpose. She gave Foreman the power, in a certain event, to sell her land for the specific purpose of applying the proceeds of sale to the payment of her bond, secured by the mortgage, in which was also inserted the aforesaid power. Before the power was executed, she exerted whatever right she had to revoke the power, and instituted proceedings to perpetually enjoin its enforcement. Did she have the right to revoke it against the consent of Foreman, the mortgagee and grantee of the power? The general

rule certainly is, that a principal, who employs an agent, may revoke the appointment at any time. It seems, however, that there are several well recognized exceptions, which are stated in a condensed form in Story's Agency, section 477, as follows : "A power of attorney or any naked authority is, in general, from the nature of it, revocable at the pleasure of the party who gave it. But where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is a part of a security, then, unless there is an express stipulation that it should be revocable, it is, from its own nature and character, in contemplation of law, irrevocable, whether it is expressed to be so or not."

Now the grantor of the power here is not dead, and the question is, whether she had the right to revoke it. As we understand, it is not contended that this mortgage, given with this power of attorney, could be considered as "coupled with an interest," in the sense of the exception. Nor are we able to see wherein the agency was conferred upon Foreman "for a valuable consideration." We are, however, inclined to think, if there had been no objection raised to the bond and mortgage, that this case would have fallen under the third class of exceptions, viz : "where it is given as a part of a security," &c., and giving a vested right would have been "irrevocable." But we have just held that the bond and mortgage of Mrs. Dunbar, a married woman, to secure a debt of her husband, the payment of which was the very object and purpose of giving the power to sell, was and is absolutely void, just as if they never existed, leaving the said power to sell entirely isolated, and without consideration or purpose. Under this state of facts, we can not suppose that the court would enforce the execution of this unsupported and naked power. When the consideration fails, the agency becomes revocable. Suppose the bond and mortgage had been paid and satisfied, would the court, nevertheless, require the power to be executed and the land sold? We can not think so. See 1 Am. & Eng. Enc. Law, page 446, and notes. We do not think that the case of *Neal* v. *Bleckley*, 36 S. C., 468, cited for the defendant, is analogous to this. In that case the married woman owed a part of the

money secured by the mortgage of both herself and husband, which mortgage contained a power of sale from her, and she permitted the sale of the lands. We agree with the Circuit Judge, that the power of sale for the specific purpose of paying a debt which was void, fell with the bond and mortgage.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.